The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first case for argument this morning is 20-1775, Corus Realty v. Zillow Group. Mr. Lee, whenever you're ready. Thank you, Your Honors, and good morning. May it please the Court. My name is Josh Lee on behalf of the appellant, Corus Realty Holdings, Inc., and I would like to reserve three minutes for rebuttal. Your Honors, this appeal turns on two incorrect findings of disclaimer made by the District Court with respect to claim construction, as well as the District Court's further error in failing to draw inferences in Corus's favor with respect to the evidence that was presented at summary judgment. Which included decisive testimony from Zillow's own technical witnesses. Mr. Lee, I don't want to take too much of your time. This is Judge Prost. But just hypothetically, we like to map these cases out when there are multiple issues. Is it correct that if we were to agree with the District Court's claim construction on cellular-based location data, would that take care of all the claims? Yes, Your Honor. Should this Court be inclined to agree with the District Court's conclusion that Corus disclaimed any and all fused or crowd-sourced information that may use cellular-based location data, that that would resolve the case. And alternatively, again, these are just hypotheticals, what about database? If we found, for example, that the District Court correctly construed that term, would that end the matter or are there other pieces dealing with that that would have to be dealt with? Yes, Your Honor. If this Court found, affirmed the District Court's decision as to the disclaimer with respect to database, that would resolve the case with respect to infringement. Okay. Thank you. Please proceed. Thank you. And certainly, we disagree with those disclaimer findings and believe they were both in error. As this Court is well aware, any disclaimer must be clear and unmistakable. And there was no such disclaimer here. Counselor, this is Joe Durano. Can you address the purported disclaimer of the coverage of an application that relies on accessing a remote database over the Internet? Yes, Your Honor. So, the underlying statements in prosecution had to do with the WISE reference, wherein the applicant, Chorus, distinguished the WISE reference as lacking a database of property information that was stored locally on the device. The only database disclosed in WISE was on a remote server accessible through the Internet. And in the prosecution, Chorus explained that the claimed invention required a local database on the mobile device from which the property information must ultimately be obtained. Now, tellingly, the District Court agreed with this and reached the same conclusion during original claim construction. That Chorus's remarks were limited to the absence of a local database, and as such, there was no disclaimer as to access to a remote server via the Internet. That initial determination by the District Court during original claim construction, when this issue was fully briefed, in and of itself demonstrates that there was no clear and unmistakable disclaimer with respect to the Internet access. Now, the District Court subsequently concluded otherwise months later at summary judgment. But that was based on a misapprehension of the District Court's original claim construction order. In that original claim construction order, the District Court found a different disclaimer. The District Court held that statements made in prosecution required that the term storage unit that appears only in Claim 14 must be limited to a database. That was the only disclaimer found in the original claim construction order. At summary judgment, the District Court cites back to that disclaimer with respect to storage unit, but incorrectly concludes that that disclaimer was with respect to the database term and with respect to the Internet access. But in fact, the Court said in that original construction, the original claim construction order at Appendix 1092, so long as the remote data is placed on the local database, then the representations in the prosecution are not a clear and unmistakable disclaimer of the myriad parts in the specification that describe access to a remote database. That's the correct conclusion here when the parties fully briefed it and when the District Court addressed it at original claim construction. And again, the Court erred in misapprehending that prior order in its summary judgment order. Similarly, the District Court erred in finding a disclaimer with respect to the cellular-based location data limitation. The Court, at summary judgment, determined that the Corus disclaimed fused sources of location information during reexamination. Tellingly, Zillow never advanced that argument below. The Court found this wholly sui sponte on its own. But in fact, Corus never amended the claims during reexamination to distinguish them from any prior art fused systems. Quite the opposite, Corus... Let me just make sure we're all on the same page. During reexam, this is with respect to the claim language, currently the change language is configured to obtain cellular-based location data. Am I right about that? Yes, Your Honor. And you amended capable of obtaining such data, right? Yes, Your Honor. All right, just to make sure I'm clear on what... It seemed to me there were really several limiting changes made during reexam to the earlier claim language. Would you agree with that? Your Honor, I would agree that there were certainly amendments and limitations made during reexamination. I think it's important to remember the context of those limitations and amendments, and they were primarily with respect to the Florence reference. And the Florence reference disclosed only the use of GPS data alone with respect to the location data. Counselor, did I hear you correctly say that the amendments that were made were not made to overcome prior art rejection? So certainly the claims... No, excuse me, Your Honor. Amendments were made to the claims to overcome the prior art Florence reference. And then I believe certain related amendments were made at the request of the examiner to just further add precise language as opposed to some of the language that had originally been used in the claims. It was my understanding that you were arguing that you made no disclaimer with respect to Florence because the amendments were meant to disclaim the use of GPS alone. Correct. Yes, Your Honor. So what is it? I mean, did you amend to... Did you disclaim with respect to Florence or not? The original claims prior to reexamination recited location data. And in view of Florence, which disclosed only the use of GPS, GPS alone, the CORUS, the patentee, amended the claims to require the cellular-based location data limitations, to require that some cellular-based location data must be used. The disclaimer that the district court found at summary judgment was with respect to any fused or other crowdsourced sources of location information that may include location data beyond cellular-based location data. And that was... Mr. Lee, this is Judge Crouse. I'm a little confused. It seems to me that the modified claim language explicitly narrows the scope for acquiring location data to an external cellular-based positioning system. Am I missing something about the language? No, Your Honor. In fact, the language that you recited was in the original construction the district court articulated. The new language that the district court added at summary judgment was to require that that location data come, quote, directly, end quote, from the cellular positioning system. And in doing so, the district court explained that it was adding that language to remove any fused sources of location information from the scope of the claims, noting that those fused sources of location information are not coming directly from a cellular system, but are instead necessarily utilizing cellular information in addition to non-cellular information in a fused or combined manner. So, is the dispute you have with the district court because he first said he narrowed the scope for acquiring location data to an external cellular-based positioning system, and you're saying he changed that by adding the word acquiring location data only to an external? Is the difference between only in terms of what you say he changed? Yes, that's a practical approach to it, Your Honor. Again, the language that he added was the term directly, but the effect was to limit it to only, that he, the district court, was excluding. Excuse me, but if you limit language or phrase to one thing, I don't see why it's a change to say to only that one thing. If it's one thing, it's only that one thing. I think, if I understand you correctly, I think we would agree, Your Honor, and it's really the implication of the construction that the court applied in the summary judgment order. Again, his conclusion that his new construction removed from the scope of the claims the fused sources of location data that's undisputably being used by the accused applications. And with that, unless there's further questions, I'd like to reserve the remainder of my time. Thank you. Let's hear from Mr. Al-Salam. Thank you, Your Honors. This is Ramsey Al-Salam of Perkins Coie for Appellees. There are at least five independent bases from which this court could affirm the judgment below, three of which relate to the database limitation, and at least two of which relate to the acquisition of cellular data to define an area of interest. In terms of the database limitation, this court could affirm, based solely on the lower court's exercise of its discretion to prohibit plaintiffs from introducing any theory of infringement that was not disclosed in its infringement contentions. Are we talking about essentially the source code here? Not just the source code, any other. See, if we look at the infringement contentions, there is no theory of database. They simply say defendants' products have a database on them to store property information. In Zillow's responsive non-infringement contentions, we pointed out, you haven't identified where this database is, and we deny that we have any such database on the mobile device. Nevertheless, despite looking at source code, despite taking discovery, they never articulated any theory of how defendants had a database on the mobile device until the expert report by Dr. Martin. So source code is part of it. The motion that was brought, which I believe is at A1219 in the appendix, had three bases. It asked the court to exclude any theories not disclosed in the infringement contentions. It asked that they exclude any reliance on source code because source code was not disclosed. And it asked that it exclude any reliance on the doctrine of equivalence because there was no such theory under the doctrine of equivalence articulated. One thing Chorus has raised in this appeal is, well, in our motion, Zillow's motion, they refer to a theory, just one theory. That is only in the heading, and it's unclear what that's referring to. But if you look at the actual contentions, there is no theory, no explanation of where a database is on the accused devices. And Zillow asked in its motion that anything that wasn't disclosed in the contentions be excluded. And the district court, in a very thoughtful opinion, granted that request. The court found that there was no diligence on the part of Chorus to amend its contentions, that the local rules and software cases require the identification of source code if you're going to rely on source code, and that even though prejudice is not required to have granted that relief to Zillow, that Zillow was also prejudiced, which it was in part because it became apparent later that the parties have a dispute as to the agreed construction of database. I'm sorry, but before your time runs out, would you mind trying to segue to the other claim term that we were talking about, discussing with your friends, that is the cellular-based location data? Yes, sure. Do you want me to talk about just the disclaimer issue or just the reasons why there is not a genuine issue of fact on cellular-based location data generally? Well, I don't know. I mean, you can answer the question however you wish. You heard his arguments this morning. He was very much focused on disclaimers, so why don't you start with that? If you'll indulge me, let me just start sort of from the bigger picture. The claims were allowed during reexamination based solely on the limitations relating to cellular-based location data. And as the court has pointed out, those claims were even narrowed. At one point, the claims were having a code that corresponds to receiving – or no, the area of interest corresponds to the cellular-based location data. And the device is configured to receive – I mean, I'm sorry, capable of receiving cellular-based location data, and then it went to configure to. To be clear, this is undisputed, the accused products don't have any way of determining their location, the accused apps. All they do is ask the operating system, where am I? And the operating system returns a latitude and a longitude, which is then used by the accused apps. The apps are not configured in any specific way to use cellular-based location data. But it's true, as counsel said, we did not focus on disclaimer for our summary judgment motion. The district court did that analysis on its own, which we think was correct, and found that as an alternative basis to grant summary judgment. Counsel, Judge Arena, explain to me a question that I have here. And how does the operating systems of the mobile devices, the iOS or the Android operating systems, how do they determine location? We don't know, Your Honor. This is one of the bases for summary judgment. All we know is that, first of all, it was undisputed that they keep it secret. The two operating systems are Apple and Google. And neither Apple nor Google disclose exactly what algorithms they used to determine the location of the device. Even Corus's own experts admitted they did not know how they worked. Mr. Sterza admitted that at 2704 and 2724 of the appendix. Dr. Martin admitted it at 2761 and 2762. We don't know. And critically, Corus took no discovery of Apple or Google. They never served a subpoena on them or sought to learn how they worked. Instead, they relied on hearsay in web statements by Apple and Google that they use a combination of sources, which includes cellular. What Apple and Google say in these web statements is that we use GPS, we use Wi-Fi, we use cellular. I think they even mention Bluetooth at times. Exactly how they do it is unclear. Mr. Sterza, for example, one of Corus's experts, said at one point he thought they might ask the cellular carriers, where am I? So in other words, my phone, if I could ask, could send a signal to the cellular carriers and say, can you tell me where I am? And the cellular carriers could possibly use some type of triangulation to determine where the phone is and report that location back. Now, that would be as the E911 system works, which is referred to in the file history. So in the E911 system, if you hit 911 with a cellular phone, the cell carrier has to report your position to the police. And that's how presumably it's done. But Mr. Sterza and all the witnesses agreed they didn't really know how that was done. And at least one other possibility is that they use crowdsourced cellular tower location information. And let me just explain how – well, Mr. Sterza explained this too. The way it works is when you have your GPS on on your phone, your phone is receiving cellular signals. And Apple and Google might take that pattern of cellular signals and then correlate it with your GPS location, such that they then know when a phone is seeing signals from cell towers 1, 2, and 3 in this manner, it's probably located here. When all of this happens, where is the location of the phone stored? On the mobile device? Yes. When you say stored, we don't – I mean, stored would be stored temporarily. Right. That's a good question. You're arguing that the apps don't infringe because all the searches in the apps rely on remote databases on the Internet. And now what it sounds to me like what you're saying is that we don't know. And it may rely on the app because it's relying on the operating system of Apple and Google. I'm sorry, Your Honor, but these are two separate issues. So let me explain. The database issue is unrelated to the determining location by cellular-based location data. Okay. I meant determining the location. Yes. So there's no issue about where that's stored. That doesn't matter because the database is based on storing property information, not location data. So it's not really stored. What happens is if you want to look at a map of where you are, if you've ever used the Accusillo app, you can be anywhere you are and hit a button, and it will use the My Location button, and it will show you a map of your general location. And it will display icons of properties, for example, for sale in that location. So one of the issues is where is it getting its location? Is it based purely on cellular data? What data is being used? And that is determined and controlled by the operating system with the algorithm for which we don't really understand. And one of our arguments is they have an implicit claim construction that any use of cellular data in any manner satisfies these claims because they don't really know how it's done. And there's lots of different ways it could be done, but that implicit claim construction is wrong as a matter of law. But separately from that, where are they getting this property information? Because that's a separate limitation. Is the property information coming from a database on the phone, or, as in the prior Art Weiss reference, does the Zillow and Accused apps, are they required to access a remote database to pull down this property information? And frankly, it's undisputed the latter is correct. Just as in Weiss, the Accused apps do not allow users to search for properties without Internet access. Mr. Ocelot, this is Paul here. I was wondering if you could address the disclaimer issue that Mr. Lee discussed, database limitation. Yes, that is incorrect. There was no – the disclaimers are separate. Let me explain what happened at claim construction. At claim construction, there were two issues presented to Judge Robart. First of all, claim 14 did not have anything about a local database. It just said a storage unit for storing property information. We argued that based on the disparagement and amendments to the other claims to distinguish Weiss and the file history, that you had to read a database limitation into claim 14. Judge Robart agreed, found that it was a disclaimer, and read the database limitation into claim 14. Now separately, we made another argument. I know this is unusual, but during reexamination, the original claims based on the Weiss amendments simply said that property data was obtained from a database on the local device. During reexamination, and for no reason to distinguish prior art, they added from a database on the device and a remote database. But we argued that limitation rent the claims indefinite because it was irreconcilable with the Weiss disclaimer. In fact, I know it's odd, but we argued that it was an attempt to broaden the claims. Mr. Alston, this is Judge Schall. What you're saying is they took back in reexamination with regard to the Florence reference what they had given up in the original disclaimer in connection with the Weiss reference. Exactly, Your Honor. We argued they were attempting to broaden the claims back out because they knew that the Zillow accused dabs relied on getting data from a remote database. Now, what Judge Robart decided, which is reasonable, is that it wasn't irreconcilable because it's possible they could, in the first instance, get the data from a remote database, but then it had to be stored in a database on the local device such that it was ultimately retrieved from a database in the local device. Now, that is actually how the product made by the inventors worked. First of all, it had no cellular connectivity at all. There's one sentence in the whole patent about cellular connectivity. That's it. They never invented anything to do with cellular connectivity, but that's beside the point. But the way it worked was at the office, they downloaded the multiple listing database to the device, and then it would work in a standalone manner without any Internet access. And that's the first embodiment disclosed in the patent. It's a standalone device that doesn't require Internet access. Now, Judge Robart never addressed whether the disclaimer required standalone capability. He never addressed that in claim construction because it wasn't right for decision. There was no term to construe to address that issue. We, Zillow, always believed that that disclaimer required that prevented or disclaimed any device that required real-time access to a remote database to operate, as the Zillow app does. Counsel, can you hear me? Yes, I can, Your Honor. Okay. Did we hear that, Michael? Did the timer go off? Yes, Your Honor. I apologize. I missed it. No, that's okay. You were answering Judge Shaw's question, so I just want to go back to the panel and see if there are any further questions they'd like to pose before you sit down. Hearing none, I think your time has expired. Thank you. Thank you, Your Honor. Mr. Lee, you've got some remaining rebuttal time. Yes, thank you, Your Honor. I'd like to first address the database limitation and counsel's argument that Korus allegedly disclosed no theory, his words, with respect to the database limitation and its infringement contentions. That's incorrect. Zillow conceded below, at Appendix 1213, that Korus disclosed one theory with respect to the database limitation, and Korus provided notice of that and its infringement contentions. Korus's contentions included, and the screenshots, demonstrated that property information was downloaded from a remote server into a local database on the mobile devices that run the apps, from which that property information on the local database could be searched and retrieved as the user selected different property icons on the map. And with respect to counsel's argument that Korus broadened the claim scope during reexamination, that's plainly not true. Certainly, the examiner found no such broadening when he allowed the amendments. And the amendment that counsel points to was an additional limitation that Korus added in reexamination requiring, adding language requiring, that the property information be obtained from, one, a remote server, and then, two, stored in the local database. That's not broadening. That's an additional limitation specifying the manner in which this property information is going to be obtained and utilized. And with respect to the cellular-based location data, counsel concedes, certainly, that the apps are, that they call the operating systems which use cellular information. Counsel argues that, in response, I believe, Judge Rainey, your question, well, how do those operating systems determine location? Zillow's counsel says, we don't know. Well, more tellingly, Zillow's witnesses do know. And they provided that testimony at Appendix 4818, 4824, 4849, 4851, and 4890, explaining that those operating systems utilize cellular signals and ping cell towers. Now, it's true we don't know exactly how that cellular information may be combined with other non-cellular information, whether it be 50% cellular and 50% GPS or some other combination. But that's not required by the claims under a correct claim construction of the application term. And unless there's any further questions, Your Honor. Thank you. We thank both sides, and the case is submitted. Thank you.